AO 257 (Rev. 6/78)

## DEFENDANT INFORMATION RELATIVE TO A CRIMINAL ACTION - IN U.S. DISTRICT COURT

BY: ☐ COMPLAINT ☐ INFORMATION ☒ INDICTMENT ☐ SUPERSEDING

**OFFENSE CHARGED**

Title 18 U.S.C. § 1349 - Conspiracy to Commit Wire Fraud;
Title 18 U.S.C. § 1343 - Wire Fraud;
Title 18 U.S.C. § 1957(a) - Money Laundering (Expenditure)

☐ Petty
☐ Minor
☐ Misde-
       meanor
☒ Felony

PENALTY: SEE ATTACHMENT

Name of District Court, and/or Judge/Magistrate Location

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

FILED
OCT 29 2009
RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
OAKLAND

**DEFENDANT - U.S**

▶ KARIM AKIL

DISTRICT COURT NUMBER

CR09-01062 PJH

**PROCEEDING**

Name of Complainant Agency, or Person (& Title, if any)

INTERNAL REVENUE SERVICE

☐ person is awaiting trial in another Federal or State Court,
give name of court

☐ this person/proceeding is transferred from another district
per (circle one) FRCrp 20, 21, or 40. Show District

☐ this is a reprosecution of
charges previously dismissed
which were dismissed on motion
of:
  ☐ U.S. ATTORNEY ☐ DEFENSE

SHOW
DOCKET NO.

☐ this prosecution relates to a
pending case involving this same
defendant

MAGISTRATE
CASE NO.

☐ prior proceedings or appearance(s)
before U.S. Magistrate regarding this
defendant were recorded under

Name and Office of Person
Furnishing Information on this form        JOSEPH P. RUSSONIELLO

☒ U.S. Attorney ☐ Other U.S. Agency

Name of Assistant U.S.
Attorney (if assigned)        STEPHEN G. CORRIGAN, AUSA

**DEFENDANT**

**IS NOT IN CUSTODY**
   Has not been arrested, pending outcome this proceeding.
1) ☐ If not detained give date any prior
      summons was served on above charges ▶

2) ☐ Is a Fugitive

3) ☐ Is on Bail or Release from (show District)

**IS IN CUSTODY**

4) ☐ On this charge

5) ☒ On another conviction          } ☐ Federal ☒ State

6) ☐ Awaiting trial on other charges
      If answer to (6) is "Yes", show name of institution

Has detainer ☐ Yes     } If "Yes"
been filed?    ☒ No         give date
                                   filed

DATE OF
ARREST ▶          Month/Day/Year

Or... if Arresting Agency & Warrant were not

DATE TRANSFERRED ▶          Month/Day/Year
TO U.S. CUSTODY

☐ This report amends AO 257 previously submitted

**ADDITIONAL INFORMATION OR COMMENTS**

PROCESS:
☐ SUMMONS ☐ NO PROCESS* ☒ WARRANT          Bail Amount: NO BAIL

If Summons, complete following:
☐ Arraignment ☐ Initial Appearance

Defendant Address:

*Where defendant previously apprehended on complaint, no new summons or
warrant needed, since Magistrate has scheduled arraignment*

Date/Time:          Before Judge:

Comments:

PENALTY SHEET

Defendant KARIM AKIL

| | |
|---|---|
| COUNT ONE: | 0-20 years imprisonment, $250,000 fine, 3 years supervised release, $100 special assessment |
| COUNTS TWO thru THIRTY-FIVE: | 0-20 years imprisonment, $250,000 fine, 3 years supervised release, $100 special assessment |
| COUNTS THIRTY-SIX thru FORTY-THREE: COUNTS FORTY-FIVE thru FIFTY-TWO: | 0-10 years imprisonment, $250,000 fine or twice the amount of the criminally derived property involved in the transaction, 3 years supervised release, $100 special assessment |

AO 257 (Rev. 6/78)

---

## DEFENDANT INFORMATION RELATIVE TO A CRIMINAL ACTION - IN U.S. DISTRICT COURT

BY: ☐ COMPLAINT   ☐ INFORMATION   ☒ INDICTMENT
☐ SUPERSEDING

Name of District Court, and/or Judge/Magistrate Location

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

FILED

OCT 29 2009

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
OAKLAND

PJH

--- OFFENSE CHARGED ---

Title 18 USC § 1349 - Conspiracy to Commit Wire Fraud;
Title 18 U.S.C. § 1343 - Wire Fraud;
Title 18 U.S.C. § 1957(a) - Money Laundering (Expenditure)

☐ Petty
☐ Minor
☐ Misde-
   meanor
☒ Felony

PENALTY:   SEE ATTACHMENT

--- DEFENDANT - U.S ---

▶ AMY SCHLOEMANN

DISTRICT COURT NUMBER

CR09-01062

--- PROCEEDING ---

Name of Complaintant Agency, or Person (& Title, if any)

INTERNAL REVENUE SERVICE

☐ person is awaiting trial in another Federal or State Court,
   give name of court

☐ this person/proceeding is transferred from another district
   per (circle one) FRCrp 20, 21, or 40. Show District

☐ this is a reprosecution of
   charges previously dismissed
   which were dismissed on motion
   of:
   ☐ U.S. ATTORNEY   ☐ DEFENSE
}
SHOW
DOCKET NO.

☐ this prosecution relates to a
   pending case involving this same
   defendant
}
MAGISTRATE
CASE NO.

☐ prior proceedings or appearance(s)
   before U.S. Magistrate regarding this
   defendant were recorded under
}

Name and Office of Person
Furnishing Information on this form   JOSEPH P. RUSSONIELLO
☒ U.S. Attorney   ☐ Other U.S. Agency

Name of Assistant U.S.
Attorney (if assigned)   STEPHEN G. CORRIGAN, AUSA

--- DEFENDANT ---

IS NOT IN CUSTODY
   Has not been arrested, pending outcome this proceeding.
1) ☒ If not detained give date any prior
      summons was served on above charges ▶

2) ☐ Is a Fugitive

3) ☐ Is on Bail or Release from (show District)

IS IN CUSTODY
4) ☐ On this charge

5) ☐ On another conviction          } ☐ Federal ☐ State

6) ☐ Awaiting trial on other charges
      If answer to (6) is "Yes", show name of institution

Has detainer ☐ Yes    } If "Yes"
been filed?  ☐ No      } give date
                          filed

DATE OF
ARREST ▶                Month/Day/Year

Or... if Arresting Agency & Warrant were not

DATE TRANSFERRED ▶      Month/Day/Year
TO U.S. CUSTODY

☐ This report amends AO 257 previously submitted

--- ADDITIONAL INFORMATION OR COMMENTS ---

PROCESS:
☐ SUMMONS   ☐ NO PROCESS*   ☒ WARRANT       Bail Amount: NO BAIL

If Summons, complete following:
☐ Arraignment  ☐ Initial Appearance

Defendant Address:

* Where defendant previously apprehended on complaint, no new summons or
warrant needed, since Magistrate has scheduled arraignment

Date/Time:                Before Judge:

Comments:

PENALTY SHEET

Defendant AMY SCHLOEMANN

COUNT ONE:                                     0-20 years imprisonment, $250,000 fine,
                                               3 years supervised release, $100 special
                                               assessment

COUNTS TWO thru THIRTY-FIVE:                   0-20 years imprisonment, $250,000 fine,
                                               3 years supervised release, $100 special
                                               assessment

COUNTS THIRTY-SIX thru FORTY-THREE:            0-10 years imprisonment, $250,000 fine or
COUNTS FORTY-FIVE thru FIFTY-TWO:               twice the amount of the criminally derived
                                               property involved in the transaction, 3 years
                                               supervised release, $100 special assessment

AO 257 (Rev. 6/78)

## DEFENDANT INFORMATION RELATIVE TO A CRIMINAL ACTION - IN U.S. DISTRICT COURT

BY: ☐ COMPLAINT ☐ INFORMATION ☒ INDICTMENT
☐ SUPERSEDING

─── OFFENSE CHARGED ───

Title 18 U.S.C. § 1349 - Conspiracy to Commit Wire Fraud;
Title 18 U.S.C. § 1343 - Wire Fraud;
Title 18 U.S.C. § 1957(a) - Money Laundering (Expenditure)

☐ Petty
☐ Minor
☐ Misde-
meanor
☒ Felony

PENALTY:   SEE ATTACHMENT

Name of District Court, and/or Judge/Magistrate Location
NORTHERN DISTRICT OF CALIFORNIA
OAKLAND DIVISION

FILED

OCT 29 2009

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
OAKLAND

─── DEFENDANT - U.S ───
▶ LOUISA WONDA KIDD

DISTRICT COURT NUMBER
CR09-01062 PJH

─── PROCEEDING ───

Name of Complaintant Agency, or Person (& Title, if any)

INTERNAL REVENUE SERVICE

☐ person is awaiting trial in another Federal or State Court,
give name of court

☐ this person/proceeding is transferred from another district
per (circle one) FRCrp 20, 21, or 40. Show District

☐ this is a reprosecution of
charges previously dismissed
which were dismissed on motion
of:
   ☐ U.S. ATTORNEY ☐ DEFENSE

SHOW
DOCKET NO.

☐ this prosecution relates to a
pending case involving this same
defendant

MAGISTRATE
CASE NO.

☐ prior proceedings or appearance(s)
before U.S. Magistrate regarding this
defendant were recorded under

Name and Office of Person
Furnishing Information on this form   JOSEPH P. RUSSONIELLO

☒ U.S. Attorney ☐ Other U.S. Agency

Name of Assistant U.S.
Attorney (if assigned)   STEPHEN G. CORRIGAN, AUSA

─── DEFENDANT ───

IS *NOT* IN CUSTODY
1) ☒ Has not been arrested, pending outcome this proceeding.
     If not detained give date any prior
     summons was served on above charges ▶

2) ☐ Is a Fugitive

3) ☐ Is on Bail or Release from (show District)

IS IN CUSTODY
4) ☐ On this charge

5) ☐ On another conviction          ☐ Federal ☐ State

6) ☐ Awaiting trial on other charges
     If answer to (6) is "Yes", show name of institution

Has detainer ☐ Yes   If "Yes"
been filed?  ☐ No    give date
                     filed

DATE OF ▶   Month/Day/Year
ARREST

Or... if Arresting Agency & Warrant were not

DATE TRANSFERRED ▶   Month/Day/Year
TO U.S. CUSTODY

☐ This report amends AO 257 previously submitted

─── ADDITIONAL INFORMATION OR COMMENTS ───

PROCESS:
☒ SUMMONS ☐ NO PROCESS* ☐ WARRANT

Bail Amount: _____

If Summons, complete following:
☐ Arraignment ☒ Initial Appearance

* Where defendant previously apprehended on complaint, no new summons or
warrant needed, since Magistrate has scheduled arraignment

Defendant Address:
484 Lake Park Avenue #294
Oakland, CA 94610

Date/Time: 11/4/2009 at 10:00 am   Before Judge: Timothy J. Bommer

Comments:

PENALTY SHEET

Defendant LOUISE WONDA KIDD

COUNT ONE:                                      0-20 years imprisonment, $250,000 fine,
                                                3 years supervised release, $100 special
                                                assessment

COUNTS TWO thru THIRTY-THREE:                   0-20 years imprisonment, $250,000 fine,
                                                3 years supervised release, $100 special
                                                assessment

COUNTS THIRTY-SIX thru FORTY-THREE:             0-10 years imprisonment, $250,000 fine or
COUNTS FORTY-FIVE thru FIFTY-TWO:               twice the amount of the criminally derived
                                                property involved in the transaction, 3 years
                                                supervised release, $100 special assessment

AO 257 (Rev. 6/78)

## DEFENDANT INFORMATION RELATIVE TO A CRIMINAL ACTION - IN U.S. DISTRICT COURT

BY: ☐ COMPLAINT   ☐ INFORMATION   ☒ INDICTMENT   ☐ SUPERSEDING

Name of District Court, and/or Judge/Magistrate Location
NORTHERN DISTRICT OF CALIFORNIA
OAKLAND DIVISION

**FILED**
RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
OAKLAND

OCT 2 9 2009

PJH

┌─ OFFENSE CHARGED ─────────────────┐

Title 18 U.S.C. § 1349 - Conspiracy to Commit Wire Fraud;
Title 18 U.S.C. § 1343 - Wire Fraud;
Title 18 U.S.C. § 1957(a) - Money Laundering (Expenditure)

☐ Petty
☐ Minor
☐ Misde-meanor
☒ Felony

PENALTY:   SEE ATTACHMENT

─ DEFENDANT - U.S ─

► MICHELLE McGUIRE

DISTRICT COURT NUMBER

# CR09-01062

┌─ PROCEEDING ─────────────────┐

Name of Complaintant Agency, or Person (& Title, if any)

INTERNAL REVENUE SERVICE

☐ person is awaiting trial in another Federal or State Court, give name of court

☐ this person/proceeding is transferred from another district per (circle one) FRCrp 20, 21, or 40. Show District

☐ this is a reprosecution of charges previously dismissed which were dismissed on motion of:
☐ U.S. ATTORNEY   ☐ DEFENSE
}   SHOW DOCKET NO.

☐ this prosecution relates to a pending case involving this same defendant
}   MAGISTRATE CASE NO.

☐ prior proceedings or appearance(s) before U.S. Magistrate regarding this defendant were recorded under
}

Name and Office of Person
Furnishing Information on this form   JOSEPH P. RUSSONIELLO

☒ U.S. Attorney   ☐ Other U.S. Agency

Name of Assistant U.S.
Attorney (if assigned)   STEPHEN G. CORRIGAN, AUSA

─ DEFENDANT ─

**IS NOT IN CUSTODY**
Has not been arrested, pending outcome this proceeding.
1) ☒ If not detained give date any prior summons was served on above charges ►

2) ☐ Is a Fugitive

3) ☐ Is on Bail or Release from (show District)

**IS IN CUSTODY**

4) ☐ On this charge

5) ☐ On another conviction
}   ☐ Federal   ☐ State

6) ☐ Awaiting trial on other charges

If answer to (6) is "Yes", show name of institution

Has detainer been filed?   ☐ Yes   ☐ No
}   If "Yes" give date filed

DATE OF ARREST   Month/Day/Year

Or... if Arresting Agency & Warrant were not

DATE TRANSFERRED TO U.S. CUSTODY ►   Month/Day/Year

☐ This report amends AO 257 previously submitted

┌─ ADDITIONAL INFORMATION OR COMMENTS ─────────────────┐

PROCESS:
☐ SUMMONS   ☐ NO PROCESS*   ☒ WARRANT

Bail Amount: NO BAIL

If Summons, complete following:
☐ Arraignment   ☐ Initial Appearance

Defendant Address:

* Where defendant previously apprehended on complaint, no new summons or warrant needed, since Magistrate has scheduled arraignment

Date/Time:   Before Judge:

Comments:

PENALTY SHEET

Defendant MICHELLE McGUIRE

COUNT ONE:                              0-20 years imprisonment, $250,000 fine,
                                        3 years supervised release, $100 special assessment

COUNTS FIFTEEN, NINETEEN:               0-20 years imprisonment, $250,000 fine,
TWENTY-EIGHT:                           3 years supervised release, $100 special assessment

COUNTS FORTY-FIVE and FIFTY:            0-10 years imprisonment, $250,000 fine or twice the
                                        amount of the criminally derived  property involved
                                        in the transaction, 3 years supervised release,
                                        $100 special assessment

AO 257 (Rev. 6/78)

## DEFENDANT INFORMATION RELATIVE TO A CRIMINAL ACTION - IN U.S. DISTRICT COURT

BY: ☐ COMPLAINT   ☐ INFORMATION   ☒ INDICTMENT   ☐ SUPERSEDING

---

### OFFENSE CHARGED

Title 18 U.S.C. § 1349 - Conspiracy to Commit Wire Fraud;
Title 18 U.S.C. § 1343 - Wire Fraud;
Title 18 U.S.C. § 1957(a) - Money Laundering (Expenditure)

☐ Petty
☐ Minor
☐ Misde-meanor
☒ Felony

PENALTY:   SEE ATTACHMENT ~~████████~~

---

Name of District Court, and/or Judge/Magistrate Location

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

*FILED*
*OCT 2 9 2009*
*RICHARD W. WIEKING*
*CLERK, U.S. DISTRICT COURT*
*NORTHERN DISTRICT OF CALIFORNIA*
*OAKLAND*

### DEFENDANT - U.S

▶ KASHKA CLAY

DISTRICT COURT NUMBER

CR09-01062 PJH

---

### PROCEEDING

Name of Complainant Agency, or Person (& Title, if any)

INTERNAL REVENUE SERVICE

☐ person is awaiting trial in another Federal or State Court, give name of court

_____

☐ this person/proceeding is transferred from another district per (circle one) FRCrp 20, 21, or 40. Show District

_____

☐ this is a reprosecution of charges previously dismissed which were dismissed on motion of:
☐ U.S. ATTORNEY   ☐ DEFENSE

} SHOW DOCKET NO.

☐ this prosecution relates to a pending case involving this same defendant

} MAGISTRATE CASE NO.

☐ prior proceedings or appearance(s) before U.S. Magistrate regarding this defendant were recorded under

}

Name and Office of Person Furnishing Information on this form   JOSEPH P. RUSSONIELLO

☒ U.S. Attorney   ☐ Other U.S. Agency

Name of Assistant U.S. Attorney (if assigned)   STEPHEN G. CORRIGAN, AUSA

---

### DEFENDANT

**IS NOT IN CUSTODY**
Has not been arrested, pending outcome this proceeding.
1) ☒ If not detained give date any prior summons was served on above charges

2) ☐ Is a Fugitive

3) ☐ Is on Bail or Release from (show District)

_____

**IS IN CUSTODY**
4) ☐ On this charge

5) ☐ On another conviction
}
☐ Federal   ☐ State

6) ☐ Awaiting trial on other charges
If answer to (6) is "Yes", show name of institution

_____

Has detainer been filed?   ☐ Yes   ☐ No
}
If "Yes" give date filed _____

DATE OF ARREST ▶   Month/Day/Year

Or... if Arresting Agency & Warrant were not

DATE TRANSFERRED TO U.S. CUSTODY ▶   Month/Day/Year

_____

☐ This report amends AO 257 previously submitted

---

### ADDITIONAL INFORMATION OR COMMENTS

PROCESS:
☒ SUMMONS   ☐ NO PROCESS*   ☐ WARRANT      Bail Amount: _____

If Summons, complete following:
☐ Arraignment   ☒ Initial Appearance

*Where defendant previously apprehended on complaint, no new summons or warrant needed, since Magistrate has scheduled arraignment*

Defendant Address:
1277 Bates Road
Oakland CA 94610

Date/Time: 11/4/2009 at 10:00 am   Before Judge: Timothy J. Bommer

Comments:

PENALTY SHEET

Defendant KASHKA CLAY

COUNT ONE:                          0-20 years imprisonment, $250,000 fine,
                                    3 years supervised release, $100 special assessment

COUNT THIRTY-FIVE:                  0-20 years imprisonment, $250,000 fine,
                                    3 years supervised release, $100 special assessment

COUNT FIFTY-THREE:                  0-10 years imprisonment, $250,000 fine or twice the
                                    amount of the criminally derived property involved
                                    in the transaction, 3 years supervised release,
                                    $100 special assessment

AO 257 (Rev. 6/78)

## DEFENDANT INFORMATION RELATIVE TO A CRIMINAL ACTION - IN U.S. DISTRICT COURT

BY: ☐ COMPLAINT  ☐ INFORMATION  ☒ INDICTMENT
☐ SUPERSEDING

### OFFENSE CHARGED

Title 18 U.S.C. § 1349 - Conspiracy to Commit Wire Fraud;
Title 18 U.S.C. § 1343 - Wire Fraud;
Title 18 U.S.C. § 1957(a) - Money Laundering (Expenditure)

☐ Petty
☐ Minor
☐ Misde-meanor
☒ Felony

PENALTY:  SEE ATTACHMENT

Name of District Court, and/or Judge/Magistrate Location
**NORTHERN DISTRICT OF CALIFORNIA**
OAKLAND DIVISION

FILED
OCT 29 2009
RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
OAKLAND

### DEFENDANT - U.S

▶ JAMES ROSS

DISTRICT COURT NUMBER

**CR09-01062** PJH

### DEFENDANT

**IS NOT IN CUSTODY**
Has not been arrested, pending outcome this proceeding.
1) ☒ If not detained give date any prior summons was served on above charges ▶ _____

2) ☐ Is a Fugitive

3) ☐ Is on Bail or Release from (show District) _____

**IS IN CUSTODY**
4) ☐ On this charge

5) ☐ On another conviction     } ☐ Federal  ☐ State

6) ☐ Awaiting trial on other charges
If answer to (6) is "Yes", show name of institution _____

Has detainer been filed?  ☐ Yes   If "Yes" give date filed _____
☐ No

DATE OF ARREST ▶ Month/Day/Year _____

Or... if Arresting Agency & Warrant were not

DATE TRANSFERRED TO U.S. CUSTODY  Month/Day/Year _____

### PROCEEDING

Name of Complainant Agency, or Person (& Title, if any)

**INTERNAL REVENUE SERVICE**

☐ person is awaiting trial in another Federal or State Court, give name of court _____

☐ this person/proceeding is transferred from another district per (circle one) FRCrp 20, 21, or 40. Show District _____

☐ this is a reprosecution of charges previously dismissed which were dismissed on motion of:        } SHOW DOCKET NO.
☐ U.S. ATTORNEY  ☐ DEFENSE

☐ this prosecution relates to a pending case involving this same defendant        } MAGISTRATE CASE NO.

☐ prior proceedings or appearance(s) before U.S. Magistrate regarding this defendant were recorded under        }

Name and Office of Person Furnishing Information on this form   JOSEPH P. RUSSONIELLO

☒ U.S. Attorney  ☐ Other U.S. Agency

Name of Assistant U.S. Attorney (if assigned)   STEPHEN G. CORRIGAN, AUSA

☐ This report amends AO 257 previously submitted

### ADDITIONAL INFORMATION OR COMMENTS

PROCESS:
☒ SUMMONS  ☐ NO PROCESS*  ☐ WARRANT   Bail Amount: _____

If Summons, complete following:
☐ Arraignment  ☒ Initial Appearance

Defendant Address:
550 E. Wigeon Way
Suisun City CA 94585

* Where defendant previously apprehended on complaint, no new summons or warrant needed, since Magistrate has scheduled arraignment

Date/Time: 11/4/2009 at 10:00 am   Before Judge: Timothy J. Bommer

Comments:

PENALTY SHEET

Defendant JAMES ROSS

COUNT ONE:                          0-20 years imprisonment, $250,000 fine,
                                    3 years supervised release, $100 special assessment

COUNT TWENTY:                       0-20 years imprisonment, $250,000 fine,
                                    3 years supervised release, $100 special assessment

COUNT FORTY-FOUR:                   0-10 years imprisonment, $250,000 fine or twice the
                                    amount of the criminally derived  property involved
                                    in the transaction, 3 years supervised release,
                                    $100 special assessment

AO 257 (Rev. 6/78)

| **DEFENDANT INFORMATION RELATIVE TO A CRIMINAL ACTION - IN U.S. DISTRICT COURT** |
|---|

BY: ☐ COMPLAINT   ☐ INFORMATION   ☒ INDICTMENT

☐ SUPERSEDING

Name of District Court, and/or Judge/Magistrate Location

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

**FILED**

OCT 29 2009

RICHARD W. WIEKING
CLERK U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
OAKLAND

---

**OFFENSE CHARGED**

Title 18 U.S.C. § 1349 - Conspiracy to Commit Wire Fraud;
Title 18 U.S.C. § 1343 - Wire Fraud;
Title 18 U.S.C. § 1957(a) - Money Laundering (Expenditure)

☐ Petty
☐ Minor
☐ Misde-meanor
☒ Felony

PENALTY:   SEE ATTACHMENT

**DEFENDANT - U.S**

▶ DARNELL THOMAS

DISTRICT COURT NUMBER

CR09-01062 PJH

---

**PROCEEDING**

Name of Complaintant Agency, or Person (& Title, if any)

INTERNAL REVENUE SERVICE

☐ person is awaiting trial in another Federal or State Court, give name of court

_____

☐ this person/proceeding is transferred from another district per (circle one) FRCrp 20, 21, or 40.  Show District

_____

☐ this is a reprosecution of charges previously dismissed which were dismissed on motion of:
☐ U.S. ATTORNEY   ☐ DEFENSE
} SHOW DOCKET NO.

_____

☐ this prosecution relates to a pending case involving this same defendant
} MAGISTRATE CASE NO.

☐ prior proceedings or appearance(s) before U.S. Magistrate regarding this defendant were recorded under
}

_____

Name and Office of Person Furnishing Information on this form    JOSEPH P. RUSSONIELLO

☒ U.S. Attorney   ☐ Other U.S. Agency

Name of Assistant U.S.
Attorney (if assigned)    STEPHEN G. CORRIGAN, AUSA

---

**DEFENDANT**

**IS *NOT* IN CUSTODY**

1) ☒ Has not been arrested, pending outcome this proceeding.
If not detained give date any prior summons was served on above charges ▶

2) ☐ Is a Fugitive

3) ☐ Is on Bail or Release from (show District)

_____

**IS IN CUSTODY**

4) ☐ On this charge

5) ☐ On another conviction    ☐ Federal   ☐ State

6) ☐ Awaiting trial on other charges

If answer to (6) is "Yes", show name of institution

_____

Has detainer been filed?   ☐ Yes   ☐ No
} If "Yes" give date filed

DATE OF ARREST ▶   Month/Day/Year

Or... if Arresting Agency & Warrant were not

DATE TRANSFERRED TO U.S. CUSTODY ▶   Month/Day/Year

☐ This report amends AO 257 previously submitted

---

**ADDITIONAL INFORMATION OR COMMENTS**

PROCESS:
☒ SUMMONS   ☐ NO PROCESS*   ☐ WARRANT    Bail Amount: _____

If Summons, complete following:
☐ Arraignment   ☒ Initial Appearance

*Where defendant previously apprehended on complaint, no new summons or warrant needed, since Magistrate has scheduled arraignment

Defendant Address:
1355 Oak Crest Way
Antioch CA 94531

Date/Time: 11/04/2009 at 10:00 am   Before Judge: Timothy J. Bommer

Comments:

PENALTY SHEET

Defendant DARNELL THOMAS

COUNT ONE:                           0-20 years imprisonment, $250,000 fine,
                                     3 years supervised release, $100 special assessment

# United States District Court

## FOR THE
## NORTHERN DISTRICT OF CALIFORNIA

VENUE: Oakland

---

### UNITED STATES OF AMERICA,

### V.

KARIM AKIL, a/k/a Scott Kinney, a/k/a Scott Kenney,
AMY SCHLOEMANN, a/k/a Amy Kinney,
LOUISA WONDA KIDD,
MICHELLE McGUIRE,
KASHKA CLAY, a/k/a Mark Lane, a/k/a Michael Lewis,
JAMES ROSS, and
DARNELL THOMAS,

DEFENDANT.   CR09-01062 PJH

---

INDICTMENT

Title 18 U.S.C. § 1349 - Conspiracy to
Commit Wire Fraud; Title 18 U.S.C. § 1343 -
Wire Fraud; Title 18 U.S.C. § 1957(a) -
Money Laundering (Expenditure)

---

A true bill.

_____
                          Foreman

Filed in open court this _____ day of
_____

_____
                          Clerk

Bail, $ *Issue: no bail arrest warrants:*
*Akil*
*Schloemann*
*McGuire*
10/29/09
*Issue: Summons for other*
*defendants*

1  JOSEPH P. RUSSONIELLO (CASBN 44332)
2  United States Attorney

3

4  

5

6

7

8                    UNITED STATES DISTRICT COURT
9
10                  NORTHERN DISTRICT OF CALIFORNIA

11                        OAKLAND DIVISION

12  UNITED STATES OF AMERICA,          )    No. **CR09-01062** *PJH*
13                                     )
          Plaintiff,                   )    VIOLATIONS: Title 18 U.S.C. § 1349 -
14         v.                          )    Conspiracy to Commit Wire Fraud; Title 18
                                       )    U.S.C. § 1343 - Wire Fraud; Title 18 U.S.C. §
15  KARIM AKIL, a/k/a Scott Kinney,    )    1957(a) - Money Laundering (Expenditure)
16  a/k/a Scott Kenney,                )
    AMY SCHLOEMANN, a/k/a Amy Kinney,  )    OAKLAND VENUE
17  LOUISA WONDA KIDD,                 )
    MICHELLE McGUIRE,                  )
18  KASHKA CLAY, a/k/a Mark Lane,      )
19  a/k/a Michael Lewis,               )
    JAMES ROSS, and                    )
20  DARNELL THOMAS,                    )
                                       )
21         Defendants.                 )
                                       )
22  _____)

23

24                         I N D I C T M E N T
25
26  The Grand Jury charges:

27                          Introduction

28      1.  At all times material to this indictment and incorporated by reference in all counts:

    INDICTMENT                                        

a. Defendant AMY SCHLOEMANN ("SCHLOEMANN") was a licensed realtor and

president of a business named Hiddenbrooke Mortgage, Inc. ("Hiddenbrooke"), a business

engaged in obtaining funding for mortgages located in Vallejo, California. SCHLOEMANN was

the wife of defendant KARIM AKIL ("AKIL"). SCHLOEMANN regularly completed and

caused others to complete false loan applications both for straw buyers, that is, individuals

willing to allow their names and identifying information to be used in the applications for

mortgage loans and offers to purchase real estate, and for fictitious buyers. SCHLOEMANN

also acted as a real estate broker for both straw buyers and fictitious buyers.

b. Defendant KARIM AKIL ("AKIL") was the president of a business named Marsh

Group Corporation ("Marsh Group"), located in Oakland, California. AKIL was the husband of

SCHLOEMANN. AKIL regularly employed and paid co-conspirators, including JAMES ROSS

("ROSS") and DARNELL THOMAS ("THOMAS"), to recruit individuals, preferably those with

good credit scores, to act as straw buyers of real estate.

c. SCHLOEMANN and AKIL held signature authority on business checking accounts

held at Union Bank of California ("Union Bank"), Vallejo, California, in the names of

Hiddenbrooke Mortgage Group ("Hiddenbrooke"), the Marsh Group, the Brooke Property

Management Company ("Brooke Property"), and Sanford and Son MTG ("Sanford"). AKIL and

SCHLOEMANN used these Union Bank accounts to launder the profits of the fraudulent

scheme, to make deposit payments on real property purchases in the names of straw and fictitious

buyers, and to make payments to co-conspirators.

d. Defendant MICHELLE McGUIRE ("McGUIRE") was an employee of Hiddenbrooke

Mortgage who worked as a personal assistant to AKIL. McGUIRE was responsible for assisting

in the completion of loan applications for straw buyers and fictitious buyers and submitting these

INDICTMENT                                    2

loan applications and supporting documentation to lenders. McGUIRE also authorized the use of her telephone number on documents submitted with loan applications which falsely represented that the number belonged to fictitious landlords of straw buyers. McGUIRE further authorized the use of her telephone number on a loan application which falsely represented that her telephone number belonged to a fictitious buyer's employer. McGUIRE was paid hundreds of thousands of dollars for her involvement in the fraudulent scheme.

e. Defendant LOUISA WONDA KIDD ("KIDD") was a manager and escrow officer of Financial Title Company ("Financial Title"), located in Castro Valley, California. KIDD was the escrow officer on more than 100 properties involved in the fraudulent scheme, disbursing profits of the scheme to AKIL and SCHLOEMANN through wire transfers to their various Union Bank accounts in the form of wire transfers and checks.

f. Defendants ROSS and THOMAS worked with AKIL to recruit straw buyers to purchase real property. They were each paid hundreds of thousands of dollars for their involvement in the fraudulent scheme. THOMAS also falsified information on a loan application submitted to a lender for a property THOMAS purchased.

g. Defendant KASHKA CLAY ("CLAY") was a real estate agent who purchased two properties using the alias Mark Lane, supporting one loan application with the submission to a lending institution of a false driver's license that bore CLAY's photograph and the name Mark Lane. CLAY also authorized the use of his telephone number to falsely represent to lenders that CLAY's number belonged to a certified public accountant ("CPA").

**COUNT ONE:** (18 U.S.C. § 1349 Conspiracy to Commit Wire Fraud)

2. Beginning at a time unknown to the Grand Jury, but no later than on or about October 2004, and continuing thereafter to in or about July 2007, in the Northern District of California

INDICTMENT 3

and elsewhere, the defendants,

KARIM AKIL,
a/k/a Scott Kinney, a/k/a Scott Kenney
AMY SCHLOEMANN,
a/k/a Amy Kinney,
LOUISA WONDA KIDD,
MICHELLE McGUIRE,
KASHKA CLAY,
a/k/a Mark Lane, a/k/a Michael Lewis,
JAMES ROSS, and
DARNELL THOMAS,

did knowingly attempt and conspire to commit offenses under Chapter 63 of Title 18, United

States Code, namely, wire fraud, in violation of Title 18, United States Code, Section 1343.

Means and Methods of the Conspiracy

3. Among the means and methods by which the defendants executed the scheme to

defraud were the following:

a. The defendants created a conspiracy to defraud involving more than 100 properties

that provided profits in the millions to members of the conspiracy through, among other things,

the fraudulent purchase of real estate and the laundering of proceeds derived therefrom.

b. The defendants recruited straw buyers to purchase residential properties to avoid the

defendants' own personal financial responsibility for the loan amounts and to limit the

defendants' exposure to criminal liability.

c. The defendants encouraged buyers to participate in the real estate purchases by

promising to pay them large sums of money, and at times, paying them large sums of money, and

by falsely representing to them that: (1) the real estate transactions were legal; (2) the buyers

would not be responsible for the mortgage payments, or that the mortgage payments would be

taken over by another person shortly after the purchase of the property; (3) the purchases were

INDICTMENT                                     4

good investments; and (4) the buyers' credit ratings would benefit from the purchases.

     d. The defendants and their associates recruited and controlled individuals in key positions, including straw buyers, real estate appraisers, notaries, and escrow agents, in order to limit the defendants' exposure to criminal liability and maximize the defendants' financial gains.

     e. The defendants regularly used the name and identity of one straw buyer or fictitious buyer to simultaneously purchase multiple properties by submitting loan packages for each property in the name of the buyer to a different lender, intentionally failing to inform the lenders of the other pending loan applications and property purchases.

     f. The defendants increased their profits made on the purchases of properties by submitting documents to lenders, including purchase and sale agreements, that falsely inflated the sales prices, thereby causing the lenders to unwittingly provide loans in amounts that exceeded the true purchase prices and values of the properties.

     g. The defendants established a corporation, Hiddenbrooke, to act as mortgage brokers, at times representing sellers of real properties and at other times purporting to represent buyers of properties, including straw and fictitious buyers, and to launder the proceeds of the fraudulent scheme.

     h.  The defendants directed escrow officers to write checks payable to the defendants' corporations and to wire transfer the proceeds from the fraudulent scheme into the defendants' various corporate bank accounts.

     i. The defendants directed straw buyers to sign mortgage loan applications, some of which were blank and others that contained false information and false supporting documentation, including the following:

          1. the property would be the straw buyers' primary residence;

INDICTMENT                      5

2. the identity and telephone number of the straw buyers' employers;

3. the straw buyers' monthly income;

4. the straw buyers' bank account information;

5. the straw buyers' telephone numbers and addresses;

6. the identity and telephone number of the straw buyers' landlord; and

7. letters represented to have been composed and signed by a CPA.

j. The defendants paid the straw buyers thousands of dollars and more in exchange for allowing the defendants to purchase property in their names.

k. The defendants hired notary publics ("notaries") willing to notarize documents falsely attesting to having witnessed signatures on loan documents when in fact the documents were not signed in the presence of the notaries.

l. The defendants regularly failed to make the mortgage payments on the purchased properties, causing lenders to foreclose on the properties which resulted in financial losses to the lenders and damaged the credit ratings of the buyers.

## Overt Acts

4. In furtherance of the conspiracy and to accomplish the objects thereof, the defendants and others committed various overt acts within the Northern District of California and elsewhere, including, but not limited to, the following:

**4529 MARKET STREET, OAKLAND, CALIFORNIA** ("4529 Market Street")

5. On or about October 2004, THOMAS provided names and social security numbers of individuals he intended to use as straw buyers to another person, requesting that this person add them as authorized users on his credit cards to raise the credit scores of these individuals.

6. On or about March 2, 2005, McGUIRE authorized the submission of a document that

INDICTMENT                                        6

provided rental information to Fremont Investment and Loan ("Fremont Investment"), knowing that the document falsely represented that MCGUIRE's telephone number was the telephone number of the straw buyer's landlord.

7. On or about March 30, 2005 AKIL withdrew and caused the withdrawal of $6,700 from the Hiddenbrooke account to purchase a cashier's check made payable to Financial Title.

8. On or about March 31, 2005, AKIL, SCHLOEMANN, and KIDD caused $402,764.04 and $99,950.74 to be wire transferred from Fremont Investment to Financial Title.

9. On or about March 31, 2005, KIDD closed escrow on the property located at 4529 Market Street and disbursed the funds as directed by AKIL and SCHLOEMANN, including:

> (a) a wire transfer of $14,050 to the Hiddenbrooke account; and

> (b) a wire transfer of $30,000 to the Hiddenbrooke account for a real estate commission.

10. On or about April 1, 2005, AKIL issued a $10,000 check from the Hiddenbrooke account made payable to THOMAS.

**1009 3RD STREET, RODEO, CALIFORNIA** ("1009 3rd Street")

11. In or about April and May 2006, ROSS recruited a straw buyer, D.H., for the property located at 1009 3rd Street.

12. In or about April and May 2006, ROSS made payments on D.H.'s credit cards to increase his credit score.

13. On or about May 1, 2006, SCHLOEMANN ordered a preliminary title report from Financial Title in the name of AKIL or his assignee for 1009 3rd Street.

14. In or about June 2006, following the sale of the 1009 3rd Street property, ROSS issued checks made payable to D.H.

INDICTMENT                                      7

15. At a time unknown but prior to June 6, 2006, AKIL and SCHLOEMANN submitted and caused to be submitted to Aegis Funding Corporation ("Aegis") a California Residential Purchase Agreement ("Purchase Agreement") and a Form 1003, Uniform Residential Loan Application ("Loan Application"), for the property located at 1009 3rd Street, knowing that both documents contained false financial information about the straw buyer D.H.

16. On or about June 1, 2006, SCHLOEMANN withdrew $6,073 from the Union Bank of California Marsh Group account ("Marsh Group account") and purchased a cashier's check in the same amount made payable to Financial Title with the remitter identified as D.H.

17. On or about June 5, 2006, AKIL, SCHLOEMANN and KIDD caused wire transfers of $363,023.72 and $91,098.85 from Aegis to Financial Title.

18. On or about June 6, 2006, KIDD closed escrow on the property located at 1009 3rd Street and disbursed the funds as directed by AKIL and SCHLOEMANN, including:

> (a) a wire transfer of $15,205 to the Union Bank of California Hiddenbrooke account ("Hiddenbrooke account") for brokers fees and commissions;

> (b) a wire transfer of $67,680 to the Marsh Group account for "balance due;" and

> (c) a wire transfer of $4,520 to McGUIRE's Washington Mutual Bank account.

19. On or about June 6, 2006, SCHLOEMANN issued a $2,500 check drawn on the Marsh Group account made payable to the straw buyer D.H.

20. On or about June 6, 2006, SCHLOEMANN issued a $5,000 check drawn on the Marsh Group account made payable to ROSS.

21. On or about November 30, 2006, ROSS sent an e-mail to straw buyer D.H. regarding the overdue mortgage payment on 1009 3rd Street.

INDICTMENT                                    8

**555-557 25TH AVENUE, SAN FRANCISCO, CALIFORNIA** ("555-557 25th Avenue")

22. On or before May 12, 2006, ROSS recruited a straw buyer, K.P.L., who was a full-time student earning an annual income of less than $20,000, to purchase a residence located at 555-557 25th Avenue for the sum of $1,000,000.

23. On or about May 12, 2006, CLAY authorized the submission of a letter to a lender in support of the straw buyer's loan application, knowing the letter falsely represented it was written and signed by a CPA and that CLAY's telephone number was the telephone number of the CPA.

24. On or about May 15, 2006, AKIL and SCHLOEMANN submitted and caused to be submitted to United Security Financial Company ("United Security") a Loan Application, knowing that it contained false financial information about the straw buyer.

25. On or about May 15, 2006, SCHLOEMANN submitted a term sheet to KIDD in which SCHLOEMANN directed KIDD to disburse $225,000 to the Marsh Group account out of the escrow account for "property rehab."

26. On or about May 18, 2006, SCHLOEMANN withdrew $5,000 from the Marsh Group account and purchased a cashier's check in the same amount made payable to Financial Title.

27. On or about July 7, 2006, McGUIRE sent a facsimile to KIDD informing her that McGUIRE would bring KIDD original documents for the 555-557 25th Avenue property.

28. On or about July 12, 2006, AKIL withdrew $30,286.15 from the Marsh Group account and purchased a cashier's check in the same amount made payable to Financial Title with the remitter shown as K.P.L.

29. On or about July 13, 2006, AKIL, SCHLOEMANN, and KIDD caused wire transfers of $747,125 and $250,000 from United Security to Financial Title.

INDICTMENT                                    9

30. On or about July 13, 2006, KIDD closed escrow on the property located at 555–557 25th Avenue property and disbursed funds as directed by AKIL and SCHLOEMANN, including:

(a) a $3,130 check deposited into the Hiddenbrooke account; and

(b) a $150,000 wire transfer into the Marsh Group account for "balance due."

**2650 76TH AVENUE, OAKLAND, CALIFORNIA ("2650 76th Avenue")**

31. On an unknown date but prior to March 9, 2006, THOMAS recruited a straw buyer, J.R.A., for the property located at 2650 76th Avenue.

32. On or about March 23, 2006, McGUIRE sent an e-mail to KIDD informing KIDD that: (a) the broker's commission should be 5% of a sales price of $380,000 (which was less than the sales price of $480,000 reflected in Financial Title's closing statement), and (b) the commission was to be split 50/50.

33. On or about April 5, 2006, McGUIRE authorized the submission of a verification of rent or mortgage form to Argent Mortgage Company, LLC ("Argent") in support of the loan application of J.R.A., knowing that the form falsely represented that McGUIRE's telephone number belonged to the straw buyer's landlord.

34. On or about April 6, 2006, SCHLOEMANN submitted and caused to be submitted to Argent a Loan Application knowing that it contained false financial information about the straw buyer J.R.A.

35. On or about April 10, 2006, CLAY authorized the submission of a letter to a lender in support of the straw buyer's loan application, knowing the letter falsely represented it was written and signed by a CPA and that CLAY's telephone number was the telephone number of the CPA.

36. On or about April 20, 2006, SCHLOEMANN withdrew $35,000 from the Marsh

INDICTMENT                                      10

Group bank account and purchased a cashier's check in the same amount made payable to THOMAS.

37. On or about April 25, 2006, THOMAS issued a $8,000 check made payable to the straw buyer J.R.A.

38. On or about April 27, 2006, AKIL, SCHLOEMANN, and KIDD caused $382,791.64 and $95,875.84 to be wire transferred from Argent to Financial Title.

39. On or about April 28, 2006, KIDD closed escrow on the property located at 2650 76th Avenue and disbursed the funds as directed by AKIL and SCHLOEMANN, including:

(a) a $1,000 check made payable to McGUIRE;

(b) a wire transfer of $10,611 into the Hiddenbrooke account for "broker fees;" and

(c) a wire transfer of $87,600 into the Marsh Group account for "balance due."

**1625 63RD STREET, BERKELEY, CALIFORNIA ("1625 63rd Street")**

40. On a date unknown but prior to May 24, 2006, THOMAS recruited a straw buyer, E.Z.A., for the property located at 1625 63rd Street.

41. On or about May 24, 2006, SCHLOEMANN submitted and caused to be submitted to Argent a Purchase Agreement for the property located at 1625 63rd Street, knowing that it contained false information about the straw buyer.

42. On or about June 10, 2006, CLAY authorized the submission of a letter to a lender in support of the straw buyer's loan application, knowing that the letter falsely represented it was written and signed by a CPA and that CLAY's telephone number was the telephone number of the CPA.

43. On or about June 12, 2006, AKIL submitted a term sheet to Financial Title

INDICTMENT                                   11

instructing KIDD to disburse $335,000 to the seller and $205,000 to the Marsh Group account from the escrow account for property rehabilitation.

44. On or about June 14, 2006, SCHLOEMANN sent by facsimile a term sheet to Financial Title instructing KIDD to disburse $335,000 to the seller and $205,000 to the Marsh Group account from the escrow account for property rehabilitation.

45. On or about June 27, 2006, AKIL withdrew $18,362 from the Marsh Group account and purchased a cashier's check in the same amount made payable to Financial Title with the remitter identified as E.Z.A.

46. On or about June 28, 2006, AKIL, SCHLOEMANN and KIDD caused wire transfers of $434,954.39 and $107,895.24 from Argent to Financial Title.

47. On or about June 29, 2006, KIDD closed escrow on the property located at 1625 63rd Avenue and disbursed and caused to be disbursed the funds as directed by AKIL and SCHLOEMANN, including:

(a) a $5,275 wire transfer into the Hiddenbrooke account for "broker fees;"

(b) a $158,000 wire transfer into the Marsh Group account for "balance due;" and

(c) a $1,000 check made payable to McGUIRE for administrative services.

**5289 CRIBARI HEIGHTS, SAN JOSE, CALIFORNIA** ("5289 Cribari Heights")

48. On or about January 13, 2006, AKIL caused a Loan Application to be submitted to Argent for 5289 Cribari Heights, knowing that it contained false information about the fictitious buyer Bradford Bloom.

49. On or about January 13, 2006, McGUIRE authorized the submission of employment information to Argent knowing that it falsely represented that McGUIRE's telephone number was the telephone number of the fictitious buyer's employer.

INDICTMENT                                    12

50. On or about January 19, 2006, SCHLOEMANN withdrew and caused to be withdrawn $21,436 from the Marsh Group account and purchased a cashier's check in the same amount made payable to Financial Title with the remitter identified as Bradford Bloom.

51. On or about January 23, 2006, AKIL, SCHLOEMANN and KIDD caused $290,638.80 and $72,789.40 to be wire transferred from Argent to Financial Title.

52. On or about January 24, 2006, KIDD closed escrow on the property located at 5289 Cribari Heights and disbursed the funds as directed by AKIL and SCHLOEMANN, including:

> (a) a $11,680 check made payable to the Hiddenbrooke account for the buyer's loan origination fee; and

> (b) a $46,000 check made payable to Hiddenbrooke for "commission."

53. On or about February 2, 2006, AKIL issued a $30,000 check from the Marsh Group bank account payable to defendant THOMAS.

**1335 HILLWOOD LOOP, LINCOLN, CALIFORNIA** ("1335 Hillwood Loop")

54. On or about October 7, 2006, SCHLOEMANN submitted and caused to be submitted to Fremont Investment a Purchase Agreement for the property located at 1335 Hillwood Loop, knowing that it contained false information.

55. On or about October 7, 2006, McGUIRE submitted and caused to be submitted a Purchase Agreement to an appraiser, knowing that it contained false information, including a falsely inflated purchase price of the property.

56. On or about November 19, 2006, SCHLOEMANN submitted and caused to be submitted a Loan Application to Fremont Investment, knowing that it contained false financial information about the straw buyer M.C.

57. On or about December 6, 2006, SCHLOEMANN withdrew and caused the

INDICTMENT                                    13

withdrawals of $20,164 and $5,000 from the Hiddenbrooke account to purchase two cashier's checks made payable to Financial Title in the amounts of the withdrawals with the remitter identified on the checks as M.C.

58. On or about December 7, 2006, AKIL, SCHLOEMANN and KIDD caused wire transfers of $567,597.46 and $141,871.18 from Fremont Investment to Financial Title.

59. On or about December 8, 2006, KIDD closed escrow on the property located at 1335 Hillwood Loop and disbursed the funds as directed by AKIL and SCHLOEMANN, including:

> (a) a $12,000 wire transfer to McGUIRE's Washington Mutual Bank account;

> (b) a wire transfer of $175,000 to the Marsh Group account; and

> (c) a December 11, 2006 wire transfer of $12,780 to the Hiddenbrooke account for broker fees and commission.

**152 ROUNDS STREET, VALLEJO, CALIFORNIA** ("152 Rounds Street")

60. In or about June or July 2006, ROSS recruited a straw buyer, G.C., for the property located at 152 Rounds Street.

61. On or about July 20, 2006, SCHLOEMANN submitted and caused to be submitted to Fremont Investment a Purchase Agreement for the property located at 152 Rounds Street, knowing that it contained false information.

62. On or about July 31, 2006, SCHLOEMANN submitted and caused to be submitted to Fremont Investment a Loan Application, knowing that it contained false financial information.

63. On or about July 31, 2006, SCHLOEMANN withdrew $1,594.03 from the Hiddenbrooke account to purchase a cashier's check in the same amount made payable to Financial Title with the remitter identified as G.C.

64. On or about August 2, 2006, AKIL, SCHLOEMANN, and KIDD caused

INDICTMENT 14

$368,325.48 and $92,673 to be wire transferred from Fremont Investment to Financial Title.

65. On or about August 3, 2006, KIDD closed escrow on the property located at 152 Rounds Street and disbursed funds as directed by AKIL and SCHLOEMANN, including:

    (a) a $299 check payable to the Hiddenbrooke account for broker fees;

    (b) a wire transfer of $58,871.61 to the Marsh Group account;

    (c) a $29,975 wire transfer to ROSS' Washington Mutual Bank checking account; and

    (d) a $36,975 wire transfer to McGUIRE's Washington Mutual Bank checking account.

**405 HEARTLAND COURT, LINCOLN, CALIFORNIA** ("405 Heartland Court")

66. On or about November 2006, ROSS recruited a straw buyer, P.C., to purchase a property located at 405 Heartland Court.

67. On or about November 7, 2006, SCHLOEMANN submitted and caused to be submitted to Axiom Financial Services ("Axiom") a Purchase Agreement for the property located at 405 Heartland Court, knowing that it contained false information.

68. On or about December 18, 2006, CLAY authorized the submission of a letter to a lender in support of the straw buyer's loan application, knowing the letter falsely represented it was written and signed by a CPA and that CLAY's telephone number was the telephone number of the CPA.

69. On or about December 21, 2006, SCHLOEMANN submitted and caused to be submitted to Axiom a Loan Application, knowing that it contained false financial information about the straw buyer, P.C.

70. On or about December 26, 2006, SCHLOEMANN withdrew $2,599 from the

INDICTMENT 15

Hiddenbrooke account and purchased a cashier's check in the same amount made payable to Financial Title with the remitter identified on the check as P.C.

71. On or about December 26, 2006, AKIL, SCHLOEMANN, and KIDD caused $602,322.38 and $150,294.98 to be wire transferred from Axiom to Financial Title.

72. On or about December 27, 2006, KIDD closed escrow on the property located at 405 Heartland Court and disbursed the funds as directed by AKIL and SCHLOEMANN, including:

> (a) a $23,075 wire transfer from the escrow account to the Hiddenbrooke account for broker fees and real estate commission;

> (b) a $193,500 wire transfer to the Marsh Group account;

> (c) a $37,500 wire transfer to McGUIRE's Washington Mutual Bank account.

73. On or about December 28, 2006, SCHLOEMANN withdrew $109,491.47 from the Marsh Group account and purchased a cashier's check in the same amount made payable to ROSS.

**1009 56TH STREET, OAKLAND, CALIFORNIA ("1009 56th Street")**

74. On or about August or September 2006, ROSS recruited a straw buyer, D.C., for the property located at 1009 56th Street.

75. On or about August 1, 2006, SCHLOEMANN submitted and caused to be submitted a Purchase Agreement for the property at 1009 56th Street, to Argent, knowing that it contained false information.

76. On or about September 12, 2006, McGUIRE authorized the submission of loan documents to Argent including a document that she knew falsely represented that her telephone number was the telephone number of the straw buyer's landlord.

77. On or about September 15, 2006, CLAY authorized the submission of a letter to a

INDICTMENT                                    16

lender in support of the straw buyer's loan application, knowing that the letter falsely represented it was written and signed by a CPA and that CLAY's telephone number was the telephone number of the CPA.

78. On or about September 19, 2006, SCHLOEMANN submitted and caused to be submitted a Loan Application to Argent, knowing that it contained false financial information about the straw buyer, D.C.

79. On or about September 25, 2006, SCHLOEMANN withdraw $6,180 from the Marsh Group account and purchased a cashier's check in the same amount made payable to Financial Title with the remitter identified on the check as D.C.

80. On or about September 25, 2006, AKIL, SCHLOEMANN and KIDD caused $428,733.12 and $105,800 to be wire transferred from Argent to Financial Title.

81. On or about September 26, 2006, KIDD closed escrow on the property located at 1009 56th Street and disbursed the funds as directed by AKIL and SCHLOEMANN, including:

(a) a $10,662.56 wire transfer to the Hiddenbrooke account for broker fees;

(b) a $56,066.80 wire transfer to the Marsh Group account; and

(c) a $19,000 wire transfer to McGUIRE's Washington Mutual checking account.

**401 HEARTLAND COURT, LINCOLN, CALIFORNIA** ("401 Heartland Court")

82. In or about November 2006, SCHLOEMANN recruited N.H., an employee of Hiddenbrooke Mortgage and a resident of the State of Washington, to purchase property located at 401 Heartland Court, promising to pay N.H. $140,000 if she purchased the property.

83. On or about November 7, 2006, SCHLOEMANN submitted, and caused to be submitted, a Purchase Agreement for the property located at 401 Heartland Court to Bear Stearns, knowing that the agreement contained false information.

INDICTMENT                                    17

84. On or about November 7, 2006, SCHLOEMANN withdrew $5,000 from the Marsh Group account and purchased a cashier's check in the same amount made payable to Placer Title with the remitter identified as N.H.

85. On or about December 26, 2006, CLAY authorized the submission of a letter to a lender in support of the straw buyer's loan application, knowing that the letter falsely represented it was written and signed by a CPA and that CLAY's telephone number was the telephone number of the CPA.

86. On or about January 30, 2007, SCHLOEMANN submitted and caused to be submitted a Loan Application to Bear Sterns knowing that it contained false financial information about the straw buyer N.H.

87. On or about February 5, 2007, AKIL, SCHLOEMANN, and KIDD caused $567,184.51 and $140,598.97 to be wire transferred from Bear Stearns to Financial Title.

88. On or about February 7, 2007, KIDD closed escrow on the property located at 401 Heartland Court and disbursed the funds as directed by AKIL and SCHLOEMANN, including:

> (a)  a $22,475 wire transfer to the Hiddenbrooke account for broker fees and real estate commission; and

> (b) a $175,000 wire transfer to the Marsh Group account.

89. On or about and between February 9, 2007 and February 14, 2007, AKIL and SCHLOEMANN issued checks from the Marsh Group account payable to N.H. totaling $70,000.

**1923 HAMERSLEY LANE, LINCOLN, CALIFORNIA** ("1923 Hamersley Lane")

90. In or around November 2006, AKIL recruited a straw buyer, T.J., for the property located at 1923 Hamersley Lane.

INDICTMENT                                  18

91. On or about November 7, 2006, SCHLOEMANN submitted and caused to be submitted a Purchase Agreement for the property located at 1923 Hamersley Lane to Axiom, knowing that the agreement contained false information.

92. On or about November 7, 2006, McGUIRE provided a Purchase Agreement to an appraiser for purposes of appraising the 1923 Hamersley Lane property knowing that the purchase agreement contained a falsely inflated purchase price.

93. On or about December 5, 2006, SCHLOEMANN submitted or caused to be submitted a Loan Application to Axiom, knowing that it contained false financial information about the straw buyer, T.J.

94. On or about December 8, 2006, SCHLOEMANN withdrew $5,000 from the Marsh Group account and purchased a cashier's check in the same amount made payable to Financial Title with the remitter identified as T.J.

95. On or about December 8, 2006, AKIL, SCHLOEMANN, and KIDD caused wire transfers in the amounts of $611,661.68 and $152,980.71 from Axiom to Financial Title.

96. On or about December 11, 2006, SCHLOEMANN withdrew $2,142.53 from the Marsh Group account and purchased a cashier's check in the same amount made payable to Financial Title with the remitter identified as T.J.

97. On or about December 11, 2006, KIDD closed and caused to be closed escrow on the property located at 1923 Hamersley Lane and disbursed and caused to be disbursed the funds as directed by AKIL and SCHLOEMANN, including:

> (a)  a $43,000 wire transfer to the Hiddenbrooke account for broker fees and real estate commission; and

> (b) a $190,000 wire transfer to the Marsh Group account.

INDICTMENT                                    19

98. On or about December 18, 2006, SCHLOEMANN issued checks totaling $88,000 from the Marsh Group account payable to McGUIRE.

99. On or about January 8, 2007, SCHLOEMANN withdrew $190,000 from the Marsh Group account and purchased a cashier's check in the same amount made payable to McGUIRE.

**105 DAISY COURT, VALLEJO, CALIFORNIA** ("105 Daisy Court")

100. On or about August 13, 2005, SCHLOEMANN submitted and caused to be submitted a Purchase Agreement for the property located at 105 Daisy Court to lender Argent, knowing that it contained false information.

101. On or about September 23, 2005, CLAY signed a Loan Application for 105 Daisy Court in the name of Mark Lane and knowingly used a false Social Security number.

102. On or about September 23, 2005, AKIL submitted and caused to be submitted a Loan Application in the name of Mark Lane to Argent, knowing that it contained false information.

103. On or about September 2005, McGUIRE authorized the submission of rental information to Argent knowing that the information was false in that it identified McGUIRE's telephone number as the number belonging to the fictitious buyer's landlord.

104. On or about September 28, 2005, AKIL, SCHLOEMANN, and KIDD caused $89,916.03 and $359,150.56 to be wire transferred from Argent to Financial Title.

105. On or about September 29, 2005, KIDD closed escrow on 105 Daisy Court and disbursed the funds as directed by AKIL and SCHLOEMANN, including:

      (a) a $74,200 check made payable to Brooke Property; and

      (b) a $8,200 check made payable to the Hiddenbrooke account.

106. On or about September 29, 2005, AKIL issued a $4,000 check from the

INDICTMENT                        20

Hiddenbrooke account made payable to CLAY.

107. On or about October 17, 2005, AKIL issued a $5,000 check from the Sanford & Son MTG account made payable to CLAY.

**113 GARRETSON AVENUE, RODEO, CALIFORNIA** ("113 Garretson Avenue")

108. On or about May 31, 2006, AKIL and SCHLOEMANN submitted and caused to be submitted a Purchase Agreement for the property located at 113 Garretson Avenue to Mandalay Mortgage knowing that it contained false information.

109. In or about July 2006, AKIL and SCHLOEMANN recruited a straw buyer, K.M., for the property located at 113 Garretson Avenue.

110. On or about July 25, 2006, SCHLOEMANN caused a Loan Application to be submitted to Mandalay Mortgage knowing that it contained false financial information about the straw buyer K.M.

111. On or about July 20, 2006, CLAY authorized the submission of a letter to a lender in support of the straw buyer's loan application, knowing that the letter falsely represented it was written and signed by a CPA and that CLAY's telephone number was the telephone number of the CPA.

112. On or about July 24, 2006, McGUIRE authorized the submission of rental information to Mandalay Mortgage, knowing that it falsely represented that McGUIRE's telephone number was the telephone number of the straw buyer's landlord.

113. On or about July 29, 2006, SCHLOEMANN withdrew $8,940 from the Marsh Group account and purchased a cashier's check in the same amount made payable to Financial Title with the remitter identified as K.M.

114. On or about July 31, 2006, AKIL, SCHLOEMANN, and KIDD caused $366,924.24

INDICTMENT                                    21

and \$91,574.33 to be wire transferred from Mandalay Mortgage to Financial Title.

115. On or about August 1, 2006, KIDD closed escrow on the property located at 113 Garretson Avenue and disbursed the funds as directed by AKIL and SCHLOEMANN, including:

(a) a \$1,530 check payable to Hiddenbrooke for broker fees and real estate commission;

(b) a \$110,000 wire transfer to the Marsh Group account;

(c) a \$8,500 check made payable to CLAY; and

(d) a \$11,000 wire transfer to McGUIRE's Washington Mutual Bank account.

**2009 36TH AVENUE, OAKLAND, CALIFORNIA ("2009 36th Avenue")**

116. On or about September 2005, THOMAS provided the identities of prospective straw buyers and also fictitious identities, including the fictitious Michael McCoy, to another person requesting that this other person add the names to his various credit cards, thereby establishing credit scores for those who had none, and increasing the credit scores of those whose scores were too low to qualify to borrow funds.

117. On or about December 2, 2005, SCHLOEMANN submitted and caused to be submitted a Purchase Agreement for the property located at 2009 36th Avenue to Fremont Investment, knowing that it contained false information.

118. On or about December 2, 2005, McGUIRE authorized the submission of a document that contained rental information to Fremont Investment, knowing that the document falsely represented that McGUIRE'S telephone number was the telephone number of the fictitious buyer's landlord.

119. On or about December 3, 2005, McGUIRE purchased a \$450 money order from Washington Mutual Bank made payable to Financial Title.

INDICTMENT                                      22

120. On or about December 6, 2005, AKIL withdrew and caused the withdrawal of $5,000 from the Sanford and Son account to purchase a cashier's check made payable to Financial Title in the same amount with the remitter shown as Michael McCoy.

121. On or about December 22, 2005, AKIL, SCHLOEMANN, and KIDD caused $397,958.60 and $99,389.40 to be wire transferred from Fremont Investment to Financial Title.

122. On or about December 23, 2005, KIDD closed escrow on the property located at 2009 36th Avenue and disbursed the funds as directed by AKIL and SCHLOEMANN, including:

(a) a $20,400 wire transfer from the escrow account to the Hiddenbrooke account for broker fees and real estate commission; and

(b) a $119,775 check made payable to Marsh Group account.

123. On or about January 28, 2006, AKIL issued a $10,000 check from the Marsh Group account made payable to THOMAS.

**1119 30TH STREET, OAKLAND, CALIFORNIA ("1119 30th Street")**

124. On or about May 12, 2005, SCHLOEMANN submitted and caused to be submitted a Purchase Agreement for the property located at 1119 30th Street to Fremont Investment, knowing that it contained false information.

125. On or about May 30, 2005, AKIL caused a Loan Application to be submitted to Fremont Investment knowing that it contained false financial information about the straw buyer THOMAS.

126. On or about June 1, 2005, AKIL, SCHLOEMANN, and KIDD caused $327,211.50 and $84,000 to be wire transferred from Fremont Investment to Financial Title.

127. On or about June 2, 2005, KIDD closed escrow on the property located at 1119 30th Street and disbursed the funds as directed by AKIL and SCHLOEMANN, including a $53,500

INDICTMENT                                    23

check made payable to AKIL which was deposited into the Sanford and Son bank account.

128. On or about June 5, 2005, AKIL issued a check for $19,800 from the Sanford & Son MTG bank account to THOMAS.

**1241 EARLTON LANE, LINCOLN, CALIFORNIA** ("1241 Earlton Lane")

129. On or about November 2006, ROSS recruited a straw buyer, S.Y., for the property located at 1241 Earlton Lane.

130. On or about November 7, 2006, SCHLOEMANN submitted and caused to be submitted a Purchase Agreement for the property located at 1241 Earlton Lane to Axiom, knowing that it contained false information.

131. On or about December 20, 2006, CLAY authorized the submission of a letter to a lender in support of the straw buyer's loan application, knowing that the letter falsely represented it was written and signed by a CPA and that CLAY's telephone number was the telephone number of the CPA.

132. On or about December 29, 2006, SCHLOEMANN submitted and caused to be submitted a Loan Application to Axiom, knowing that it contained false financial information about the straw buyer S.Y.

133. On or about January 2, 2007, SCHLOEMANN withdrew $3,153.06 from the Hiddenbrooke account and purchased a cashier's check in the same amount made payable to Financial Title with the remitter identified as S.Y.

134. On or about January 2, 2007, AKIL, SCHLOEMANN, and KIDD caused $554,707.97 and $138,473.63 to be wire transferred from Axiom to Financial Title.

135. On or about January 8, 2007, KIDD closed escrow on 1241 Earlton Lane and disbursed the funds as directed by AKIL and SCHLOEMANN, including:

INDICTMENT                                      24

(a) a $22,805 wire transfer to the Hiddenbrooke account for broker fees and real

estate commission; and

(b) a $193,000 wire transfer to the Marsh Group account.

136. On or about January 8, 2007, SCHLOEMANN withdrew $43,115.14 from the

Marsh Group account and purchased a cashier's check in the same amount made payable to

ROSS.

**5031 STAGHORN COURT, VALLEJO, CALIFORNIA** ("5031 Staghorn Court")

137. In or about February 2007, ROSS recruited two straw buyers, W.Y. and K.S., for

the property located at 5031 Staghorn Court.

138. On or about July 6, 2007, SCHLOEMANN submitted and caused to be submitted a

Purchase Agreement for the property located at 5031 Staghorn Court to American Mortgage

Network, knowing that it contained false information.

139. On or about July 7, 2006, CLAY authorized the submission of a letter to a lender in

support of the straw buyer's loan application, knowing that the letter falsely represented it was

written and signed by a CPA and that CLAY's telephone number was the telephone number of

the CPA.

140. On or about July 18, 2007, SCHLOEMANN submitted and caused to be submitted

a Loan Application to American Mortgage Network, knowing that the application contained false

financial information about the prospective borrowers K.S. and W.Y.

141. On or about July 20, 2007, AKIL and SCHLOEMANN caused $708,045.47 to be

wire transferred from American Mortgage Network to Fidelity Title.

142. On or about July 20, 2007, CLAY received a $52,050.01 wire transfer from the

escrow account to CLAY's Union Bank personal checking account.

INDICTMENT                              25

All in violation of Title 18, United States Code, Section 1349.

**COUNTS TWO THROUGH THIRTY-FIVE**: (18 U.S.C. § 1343 - Wire Fraud)

143.    The allegations set forth in paragraphs 1 through 142 are hereby incorporated by reference as though set forth herein.

144.    On or about the dates specified below, in the Northern District of California, and elsewhere, the defendants identified below did knowingly devise and intend to devise a scheme and artifice to defraud and to obtain money and property by means of materially false and fraudulent pretenses, representations and promises, well knowing at the time that the pretenses, representations, and promises were false and fraudulent when made, and for the purpose of executing such scheme and artifice, did use the wires, in violation of Title 18, United States Code, Section 1343.

| COUNT | DATE | DEFENDANTS | WIRE TRANSFER(S) | ACCOUNT |
|---|---|---|---|---|
| TWO | March 31, 2005 | AKIL, SCHLOEMANN, and KIDD | $402,764.04 $99,950.74 | Fremont Investment and Loan to Financial Title |
| THREE | June 1, 2005 | AKIL, SCHLOEMANN, and KIDD | $327,211.50 $84,000 | Fremont Investment and Loan to Financial Title |
| FOUR | September 28, 2005 | AKIL, SCHLOEMANN, and KIDD | $89,916.03 $359,150.56 | Argent Mortgage Company to Financial Title |
| FIVE | December 22, 2005 | AKIL, SCHLOEMANN, and KIDD | $397,958.60 $99,389.40 | Fremont Investment and Loan to Financial Title |
| SIX | January 23, 2006 | AKIL, SCHLOEMANN, and KIDD | $290,638.80 $72,789.40 | Argent Mortgage Company to Financial Title |
| SEVEN | April 27, 2006 | AKIL, SCHLOEMANN, and KIDD | $382,791.64 $95,875.84 | Argent Mortgage Company to Financial Title |

INDICTMENT                                        26

| EIGHT | April 28, 2006 | AKIL, SCHLOEMANN, and KIDD | $87,600 | Comerica Bank to Union Bank, Marsh Group Account |
|---|---|---|---|---|
| NINE | June 5, 2006 | AKIL, SCHLOEMANN, and KIDD | $363,023.72 $91,098.85 | Aegis Funding Corporation to Financial Title |
| TEN | June 6, 2006 | AKIL, SCHLOEMANN, and KIDD | $67,680 | Comerica Bank to Union Bank, Marsh Group Account |
| ELEVEN | June 28, 2006 | AKIL, SCHLOEMANN, and KIDD | $434,954.39 $107,895.24 | Argent Mortgage Company to Financial Title |
| TWELVE | June 29, 2006 | AKIL, SCHLOEMANN, KIDD | $158,000 | Comerica Bank to Union Bank, Marsh Group Account |
| THIRTEEN | July 13, 2006 | AKIL, SCHLOEMANN, and KIDD | $747,125 $250,000 | United Security Financial Company to Financial Title |
| FOURTEEN | July 13, 2006 | AKIL, SCHLOEMANN, and KIDD | $150,000 | Comerica Bank to Union Bank, Marsh Group Account |
| FIFTEEN | July 31, 2006 | AKIL, SCHLOEMANN, KIDD and McGUIRE | $366,924.24 $91,574.33 | Mandalay Mortgage to Financial Title |
| SIXTEEN | August 1, 2006 | AKIL, SCHLOEMANN, and KIDD | $110,000 | Comerica Bank to Union Bank, Marsh Group Account |
| SEVENTEEN | August 2, 2006 | AKIL, SCHLOEMANN, and KIDD | $368,325.48 $92,673 | Fremont Investment and Loan to Financial Title |
| EIGHTEEN | August 3, 2006 | AKIL, SCHLOEMANN, and KIDD | $58,871.61 | Comerica Bank to Union Bank, Marsh Group Account |
| NINETEEN | August 3, 2006 | AKIL, SCHLOEMANN, McGUIRE, and KIDD | $36,975 | Comerica Bank to Washington Mutual Bank |

INDICTMENT                    27

| TWENTY | August 3, 2006 | AKIL, SCHLOEMANN, ROSS and KIDD | $29,975 | Comerica Bank to Washington Mutual Bank |
|---|---|---|---|---|
| TWENTY-ONE | September 25, 2006 | AKIL, SCHLOEMANN, and KIDD | $428,733.12 $105,800.50 | Argent Mortgage Company to Financial Title |
| TWENTY-TWO | September 26, 2006 | AKIL, SCHLOEMANN, and KIDD | $56,066.80 | Comerica Bank to Union Bank, Marsh Group Account |
| TWENTY-THREE | December 7, 2006 | AKIL, SCHLOEMANN, and KIDD | $567,597.46 $141,871.18 | Fremont Investment and Loan to Financial Title |
| TWENTY-FOUR | December 8, 2006 | AKIL, SCHLOEMANN, and KIDD | $175,000 | Comerica Bank to Union Bank, Marsh Group Account |
| TWENTY-FIVE | December 8, 2006 | AKIL, SCHLOEMANN, and KIDD | $152,980.71 $611,661.68 | Axiom Financial Services to Financial Title |
| TWENTY-SIX | December 11, 2006 | AKIL, SCHLOEMANN, and KIDD | $190,000 | Comerica Bank to Union Bank, Marsh Group Account |
| TWENTY-SEVEN | December 26, 2006 | AKIL, SCHLOEMANN, and KIDD | $602,322.38 $150,294.98 | Axiom Financial Services to Financial Title |
| TWENTY-EIGHT | December 28, 2006 | AKIL, SCHLOEMANN, KIDD and McGUIRE | $37,500 | Comerica Bank to Washington Mutual Bank |
| TWENTY-NINE | December 28, 2006 | AKIL, SCHLOEMANN, and KIDD | $193,500 | Comerica Bank to Union Bank, Marsh Group Account |
| THIRTY | February 5, 2007 | AKIL, SCHLOEMANN, and KIDD | $567,184.51 $140,598.97 | Bears Stearns to Financial Title |
| THIRTY-ONE | February 7, 2007 | AKIL, SCHLOEMANN, and KIDD | $175,000 | Comerica Bank to Marsh Group Account |

INDICTMENT                              28

| THIRTY-TWO | January 2, 2007 | AKIL, SCHLOEMANN, and KIDD | $554,707.97 $138,473.63 | Axiom Financial Services to Financial Title |
| THIRTY-THREE | January 8, 2007 | AKIL, SCHLOEMANN, and KIDD | $193,000.00 | Comerica Bank to Union Bank, Marsh Group Account |
| THIRTY-FOUR | July 20, 2007 | AKIL and SCHLOEMANN | $708,045.47 | America Mortgage Network to Fidelity National Title Company |
| THIRTY-FIVE | July 20, 2007 | AKIL, SCHLOEMANN, and CLAY | $52,050.01 | Fidelity National Title Company to Union Bank, Clay account |

**COUNTS THIRTY-SIX THROUGH FIFTY-THREE**: (18 U.S.C. § 1957(a) (Money Laundering - Expenditure)

145.    The allegations set forth in paragraphs 1 through 144 are hereby incorporated by reference as though set forth herein.

146.    On or about the dates described below, within the Northern District of California, and elsewhere, defendants identified below did knowingly engage in monetary transactions in criminally derived property of a value greater than $10,000, as described in Counts Thirty-Six through Fifty-Three below, said property being derived from a specified unlawful activity, namely, the conspiracy to commit wire fraud, as alleged in Count One, and wire fraud, as alleged in Counts Two through Thirty-Five:

| COUNT | DATE | DEFENDANTS | AMOUNT | WIRE TRANSFER |
|---|---|---|---|---|
| THIRTY-SIX | December 23, 2005 | AKIL, SCHLOEMANN, and KIDD | $119,775 | Comerica Bank to Union Bank, Marsh Group Account |
| THIRTY-SEVEN | January 24, 2006 | AKIL, SCHLOEMANN, KIDD | $46,000 | Comerica Bank to Union Bank, Hiddenbrooke Account |

INDICTMENT                                   29

| THIRTY-EIGHT | April 28, 2006 | AKIL, SCHLOEMANN, KIDD | $87,600 | Comerica Bank to Union Bank, Marsh Group Account |
|---|---|---|---|---|
| THIRTY-NINE | June 6, 2006 | AKIL, SCHLOEMANN, KIDD | $67,680 | Comerica Bank to Union Bank, Marsh Group Account |
| FORTY | June 29, 2006 | AKIL, SCHLOEMANN, KIDD | $158,000 | Comerica Bank to Union Bank, Marsh Group Account |
| FORTY-ONE | July 13, 2006 | AKIL, SCHLOEMANN, KIDD | $150,000 | Comerica Bank to Union Bank, Marsh Group Account |
| FORTY-TWO | August 1, 2006 | AKIL, SCHLOEMANN, KIDD | $110,000 | Comerica Bank to Union Bank, Marsh Group Account |
| FORTY-THREE | August 3, 2006 | AKIL, SCHLOEMANN, KIDD | $58,871.61 | Comerica Bank to Union Bank, Marsh Group Account |
| FORTY-FOUR | August 3, 2006 | ROSS | $29,975 | Comerica Bank to Washington Mutual Bank |
| FORTY-FIVE | August 3, 2006 | AKIL, SCHLOEMANN, McGUIRE, and KIDD | $36,975 | Comerica Bank to Washington Mutual Bank |
| FORTY-SIX | September 26, 2006 | AKIL, SCHLOEMANN, KIDD | $56,066.80 | Comerica Bank to Union Bank, Marsh Group Account |
| FORTY-SEVEN | December 8, 2006 | AKIL, SCHLOEMANN, KIDD | $175,000 | Comerica Bank to Union Bank, Marsh Group Account |
| FORTY-EIGHT | December 11, 2006 | AKIL, SCHLOEMANN, KIDD | $190,000 | Comerica Bank to Union Bank, Marsh Group Account |
| FORTY-NINE | December 28, 2006 | AKIL, SCHLOEMANN, KIDD | $193,500 | Comerica Bank to Union Bank, Marsh Group Account |

INDICTMENT                          30

| FIFTY | December 28, 2006 | AKIL, SCHLOEMANN, KIDD and McGUIRE | $37,500 | Comerica Bank to Washington Mutual Bank |
|---|---|---|---|---|
| FIFTY-ONE | January 8, 2007 | AKIL, SCHLOEMANN, KIDD | $193,000 | Comerica Bank to Union Bank, Marsh Group Account |
| FIFTY-TWO | February 7, 2007 | AKIL, SCHLOEMANN, KIDD | $175,000 | Comerica Bank to Union Bank, Marsh Group Account |
| FIFTY-THREE | July 20, 2007 | CLAY | $52,050.01 | Fidelity National Title Company to Union Bank, Marsh Group Account |

Each in violation of Title 18, United States Code, Section 1957(a).

Dated: *October 29, 2009*

A TRUE BILL

*Walt Bodley*
FOREPERSON

JOSEPH P. RUSSONIELLO
United States Attorney

MAUREEN C. BESSETTE
Chief, Oakland Branch

(Approved as to form: _____ )
AUSA CORRIGAN

INDICTMENT

31